UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CHRIS MILBURN and ANITA MILBURN, | ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) ) Case No. 4:19-cv-02719-SNLJ |
| ZURICH AMERICAN INSURANCE COMPANY, | ) ) ) ) |
| Defendant. | ) ) |

## MEMORANDUM AND ORDER

This matter comes before the Court on cross-motions for summary judgment by plaintiffs, Chris and Anita Milburn, and defendant, Zurich American Insurance Company. (ECF #26, 27). Also before the Court is plaintiffs' motion to strike the declaration of Allen H. Motter. (ECF #34). For the reasons that follow, plaintiffs' motion (ECF #26) is **GRANTED** and Zurich's motion (ECF #27) is **DENIED**. Plaintiffs' motion to strike is **DENIED AS MOOT**.[1]

---

[1] Plaintiffs take issue with Motter's statements about where plaintiffs completed the enrollment forms for the insurance policy at issue. Motter says it was in Ohio; whereas, plaintiffs say it was in Georgia. This factual dispute seems to concern issues involving the "most significant relationship" test. *See Generally Armstrong Business Servs., Inc. v. H&R Block*, 96 S.W.3d 867, 872 (Mo. App. W.D. 2002). But, because this Court concludes that Missouri public policy decides this case regardless of choice-of-law analyses, it is immaterial where plaintiffs completed their enrollment paperwork. Therefore, summary judgment is decided in plaintiffs favor without the need to weigh in on their motion to strike.

**I. BACKGROUND**

This is a declaratory judgment action by plaintiffs seeking a ruling against Zurich that its claimed right of subrogation is invalid and unenforceable under Missouri law. For its part, Zurich seeks to be reimbursed from the proceeds of a separate personal injury action filed by plaintiffs. Beyond certain factual details pertaining to the formation of their contract together, the parties otherwise agree on the facts, as set forth below.

In 2014, plaintiffs moved to Missouri and formed ACM Transportation, LLC., a Missouri limited liability company, for the "purpose of working as commercial truck drivers." In 2015, ACM contracted with Panther II Transportation, Inc., an Ohio corporation, to "haul freight" that "Panther paid ACM for the loads." As part of that relationship, Panther "required [plaintiffs] to purchase and pay for liability insurance." Specifically, Panther instructed plaintiffs to enroll in a Zurich "Group Occupational Accident Policy." That policy was issued to ACM for a policy period beginning September 1, 2015, and ending September 1, 2016. It contains a choice-of-law provision stating that it is "subject to the laws of the Contract Situs in which it is issued." Plaintiffs concede the "contract situs" is Ohio. The policy also contains a subrogation clause explaining

> **Subrogation**. We have the right to recover all payments which We have made to a Covered Person from anyone liable for the Injury. If the Covered Person recovers from anyone liable for the Injury, We will be reimbursed first from such recovery to the extent of Our payments to the Covered Person.

On April 27, 2016, plaintiffs were involved in a vehicle accident in Roane County, Tennessee. Plaintiffs filed suit against the other parties involved—non-parties, here—

2

seeking to recover for personal injuries they sustained. Zurich has paid $189,670.71 to plaintiffs for their medical expenses and disability arising out of the accident and seeks to recover these payments. However, plaintiffs claim that Missouri law bars Zurich from seeking a recovery through any funds collected in their personal injury action.

## II. STANDARD OF REVIEW

Summary Judgment involves the "threshold inquiry of determining whether there is a need for trial." *Walls v. Petrohawk Properties, LP.*, 812 F.3d 621, 624 (8th Cir. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)). In other words, summary judgment is appropriately granted if, in viewing the record in a light most favorable to the nonmoving party, there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). The movant bears the initial burden of demonstrating both the absence of a genuine issue of material fact and his or her entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once this initial burden is met, the nonmoving party must then set forth, by affidavit or other rebuttal evidence, specific facts showing that a genuine issue of material fact actually exists. *Grey v. City of Oak Grove, Mo.*, 396 F.3d 1031, 1034 (8th Cir. 2005); FED. R. CIV. P. 56(e). To satisfy this burden, the nonmoving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Scott v. Harris*, 550 U.S. 372, 380 (2007)

(quoting Anderson, 477 U.S. at 247-248). Thus, "when opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonably jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion to dismiss." *Id*. Moreover, even when a dispute is genuine—such that a jury could reasonably favor either side—it must also be the case that the disputed facts are material in that they "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248.

In a case where cross-motions for summary judgment are filed, the calculus generally remains the same. "The filing of cross motions for summary judgment does not necessarily indicate that there is no dispute as to a material fact, or have the effect of submitting the cause to a plenary determination on the merits." *Wermager v. Cormorant Tp. Bd.*, 716 F.2d 1211, 1214 (8th Cir. 1983). The "court must evaluate each party's motion on its own merits." *Int'l Union, United Auto., Aerospace & Agric. Implement Workers Of Am. v. Honeywell Int'l, Inc.*, 954 F.3d 948, 954 (6th Cir. 2020) Only when cross-motions are filed under stipulated facts is "one of the moving parties [necessarily] entitled to judgment as a matter of law." *Master Insulators of St. Louis v. Int'l Ass'n of Heat & Frost Insulators & Asbestos Workers, Local No. 1*, 925 F.2d 1118, 1120 (8th Cir. 1991).

**III. ANALYSIS**

The parties' dispute comes down to the question of what state law applies. Ohio permits conventional subrogation clauses in insurance contracts, explaining that "contractual interpretation should not be decided on the basis of what is just or

4

equitable." *See N. Buckeye Edn. Council Group Health Benefits Plan v. Lawson*, 814 N.E.2d 1216 (Ohio 2004); *Blue Cross & Blue Shield Mut. of Ohio v. Hrenko*, 647 N.E.2d 1358, 1360 (Ohio 1995); *Callihan v. Niles*, 2012 WL 34437 at *2 (Ohio App. Jan 6, 2012). Missouri does not, emphasizing that such clauses "amount to an impermissible assignment of the insured's rights," which is "against public policy." *Nevils v. Grp. Health Plan, Inc.*, 418 S.W.3d 451, 453 (Mo. 2014), cert. granted, judgment vacated sub nom. *Coventry Health Care of Missouri, Inc. v. Nevils*, 135 S. Ct. 2886 (2015); *Jos. A. Bank Clothiers, Inc. v. Brodsky*, 950 S.W.2d 297, 303 (Mo. App. E.D. 1997); *Buatte v. Gencare Health Sys., Inc.*, 939 S.W.2d 440, 441-442 (Mo. App. E.D. 1996).[2] As this Court has held, Missouri's anti-subrogation laws are "very broad" and continue to apply even after the "claim to be subrogated is eventually reduced to a judgment." *Auto-Owners Ins. Co. v. Pruitt*, 2015 WL 687131 at *5-6 (E.D. Mo. Feb. 18, 2015).

Given the disparity between Missouri and Ohio law on the issue of subrogation, it is not surprising to find that the parties focus much of their briefing on the appropriate standard to be applied in a choice-of-law analyses. Zurich says the *lex loci contractus* doctrine controls—the idea that the state law where the master policy is delivered controls, which in this case would be Ohio. To the contrary, plaintiffs say *lex loci contractus* has been supplanted by the "most significant relationship test," which takes a

---

[2] As is explained further in this Order, *Nevils* set out to apply Missouri's anti-subrogation rule to a group policy governed by federal law. Only after reversal by the U.S. Supreme Court did the Missouri Supreme Court eventually concede that the Federal Employee Health Benefits Act's "preemption clause applies in this case to preempt Missouri's anti-subrogation law." *Nevils v. Group Health Plan, Inc.*, 524 S.W.3d 502, 504 (Mo. banc. 2017). *Nevils* remains good law on the vigor of Missouri's anti-subrogation rule, which *Nevils* tacitly suggests will only be silenced in the face of federal preemptive authority.

more evaluative approach to determine applicable law based on a number of factors favoring one forum over another. *See Generally Williamson v. Hartford Life and Acc. Ins. Co.*, 2012 WL 2368473 at *3 (W.D. Mo. June 21, 2012) (discussing the most significant relationship test and *lex loci contractus* in the context of group insurance policies under Missouri law). There is also, of course, the fact that the policy contains an express choice-of-law provision favoring Ohio law.

Even assuming, however, that Zurich is correct about the insurance policy being an Ohio contract that applies Ohio law, Missouri public policy can dictate a different outcome. Long ago, the Missouri Supreme Court made clear that public policy can override "the terms of an insurance policy **normally subject to the laws of another state** where such enforcement will conflict with the public policy of the state of the forum." *Asel v. Order of United Commercial Travelers of Am.*, 197 S.W.2d 639, 645 (Mo banc. 1946) (emphasis added). Thus, public policy is a matter above and beyond a choice-of-law analysis and can act to override it entirely. *See*, e.g., *Sturgeon v. Allied Professionals Ins. Co.*, 344 S.W.3d 205, 210 (Missouri public policy against mandatory arbitration in insurance contracts was "dispositive" even before reaching a conflicts-of-law analysis); *Langston v. Hayden*, 886 S.W.2d 82, 86 (Mo. App. W.D. 1994) ("If the law of a foreign state violates our public policy, as a general rule, it will not be enforced by our state courts"); RESTATEMENT (SECOND) OF CONFLICTS OF LAW § 187 (1971) (even law of the state chosen by the parties in a contract can be overridden by "fundamental policy of the [forum] state").

6

The public policy at issue here, Missouri's anti-subrogation rule, is rather unique. Missouri law favors "freedom of contract in liability insurance," therefore "[w]hen the contract language is clear"—and, here, it expressly favors Ohio law—"exceptions based on public policy must *usually* find support in necessary implication from *statutory provisions*." *Halpin v. Am. Fam. Mut. Ins. Co.*, 823 S.W.2d 479, 483 (Mo. banc. 1992) (emphasis added)). But, it is generally agreed that Missouri's anti-subrogation public policy is entrenched in common, not statutory, law. *See Nevils*, 418 S.W.3d at 454 (explaining Missouri's anti-subrogation law under caselaw precedent); *Beechwood v. Joplin-Pittsburg Ry. Co.*, 158 S.W. 868, 870 (Mo. App. S.D. 1913) (same); *see also Huey v. Meek*, 419 S.W.3d 875, 879 (Mo. App. S.D. 2013) (noting the anti-subrogation rule "was historically based on common law rules regarding the survivability of a cause of action"). Even though *Halpin* says public policy exceptions should usually be based on statute, a litany of appellate decisions reveal this is not the case as applied to anti-subrogation—quite the opposite, in fact, as many decisions have used the anti-subrogation public policy rule to override offending contract language. As was noted by the Missouri Court of Appeals, "insurers have repeatedly attempted to draft policy provisions or establish other requirements for the purposes of seeking reimbursement from the insured in such situations. Such provisions or other requirements have been regularly invalidated by the appellate courts [using public policy]." *See Hays v. Mo. Highway and Transp. Com'n*, 62 S.W.3d 538, 540 (Mo. App. W.D. 2001) (compiling cases). It is not immediately clear from these cases why the anti-subrogation public policy rule inherits *Halpin*'s rare status of being the unusual common-law-based public

7

policy with the force of statute—perhaps it is, in part, due to its uninterrupted, century-long existence. *See Scroggins v. Red Lobster*, 325 S.W.3d 389, 392 (Mo. App. S.D. 2010) (noting the anti-subrogation rule "has been Missouri's policy since at least 1913 and, in all likelihood much longer, as the prohibition against the assignment of personal tort claims dates back to English common law and the Middle Ages"). But, in any event, this Court has no compelling reason to disturb the deep-rooted precedent in Missouri law that applies anti-subrogation public policy to offending contracts.

The Missouri Supreme Court also informs us that public policy should only be applied if "there is some local interest in the forum state to be protected" by its application. *Asel*, 197 S.W.2d at 645; *see also Gilmore v. Attebery*, 899 S.W.2d 164, 168 (Mo. App. W.D. 1995) (public policy has the "paramount concern" of "protect[ing] [Missouri's] own citizens"); *Russell v. Clapp*, 201 S.W.3d 99, 103 (Mo. App. W.D. 2006) (finding no "public interest" for which to apply public policy to override an otherwise unambiguous insurance policy). *Asel* suggests such local interests might include the fact that the contract was made and intended to be performed in the forum state, that defendant resides in the forum state, or that the insured person or property reside there— all factors cluing in on a state's broad policing powers. 197 S.W.2d at 645. Plaintiffs, here, lived in Missouri for four years, during the time of the accident and during the time of the relevant policy period; in fact, the policy set out to provide coverage to a Missouri limited liability company. Thus, despite Zurich's suggestion otherwise, it does not matter that plaintiffs no longer live in Missouri—during the relevant time period, they did. Missouri has a "substantial interest in the business of insurance of its people [and]

property." *Id.*; *Sheehan v. Northwestern Mut. Life Ins. Co.*, 44 S.W.3d 389, 396 (Mo. App. E.D. 2000) (Missouri "has a strong interest in protecting its own citizens"); *see also Gilmore*, 899 S.W.2d at 168. Accordingly, there is an identifiable local interest in applying Missouri's anti-subrogation laws to this case.

In total, this case presents another run-of-the-mill example of an insurer attempting to bypass Missouri's long-standing anti-subrogation rule. *See Hays*, 62 S.W.3d at 540; *Scroggins*, 325 S.W.3d at 392. It makes no difference that this case involves a group insurance policy, an express choice-of-law provision favoring Ohio law, or an express subrogation clause—the result must be that Missouri's anti-subrogation public policy rule controls and bars subrogation of plaintiffs' claims. To be sure, the result of this case is made that much more apparent in the recent attempt by the Missouri Supreme Court to twice apply, through the rationale of public policy, Missouri's anti-subrogation rule to a group policy otherwise governed by federal law. *See Nevils*, 524 S.W.3d at 503 (discussing litigation history). It was only after two reversals by the U.S. Supreme Court that the Missouri Supreme Court finally conceded that "the FEHBA preemption clause applies [] to preempt Missouri's anti-subrogation law." *Id.* at 504. Ohio has no such preemptive force. *See Asel*, 197 S.W.2d at 645-646. Accordingly, Ohio law must succumb to Missouri's repeated and insistent effort to prohibit subrogation clauses in insurance contracts affecting Missourians.

## IV. CONCLUSION

Accordingly,

9

**IT IS HEREBY ORDERED** that plaintiffs' motion for summary judgment (#26) is **GRANTED**. A separate Order of Judgment to follow.

**IT IS FURTHER ORDERED** that defendant's motion for summary judgment (#27) is **DENIED**.

**IT IS FURTHER ORDERED** that plaintiffs' motion to strike (#34) is **DENIED AS MOOT**.

So ordered this 12th day of August 2020.

_____
STEPHEN N. LIMBAUGH, JR.
SENIOR UNITED STATES DISTRICT JUDGE